UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Gregory Esparza, | ) | CASE NO. 3:96 CV 7434 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| Carl Anderson, Warden, | ) | AND ORDER |
| | ) | |
| Respondent. | ) | |

CHRISTOPHER A. BOYKO, J.:

I.      Introduction

        This matter is before the Court upon Petitioner Gregory Esparza's Motion to Alter or

Amend Judgment Pursuant to Rule 59(e) (ECF # 197), Supplemental Memorandum in Support

of Motion to Alter or Amend Judgment (ECF # 201), and Motion to Expand the Record

Pursuant to Rule 5 (ECF # 200).  Respondent filed a Response in Opposition (ECF # 203), and

Petitioner filed a Reply (ECF # 206).

        For the following reasons, Petitioner's Motion to Alter or Amend Judgment and

Supplemental Memorandum in Support Thereof (ECF # 197, 201) are granted in part, and

denied in part.  Petitioner's Motion to Expand the Record (ECF # 200) is granted.

II.      Background

        The factual and procedural history of this matter is set forth at length in this Court's July

12, 2012 Memorandum of Opinion and Order (ECF # 194) and will not be repeated here in full.

Rather, this Opinion will set forth only that background information necessary for resolution of Esparza's motions.

On October 13, 1983, Esparza was indicted on one count of Aggravated Murder and one count of Aggravated Robbery in connection with the death of Melanie Gerschultz.  Esparza pleaded not guilty to the charges and proceeded to trial on May 4, 1984.  The jury returned a guilty verdict as to both charges on Thursday, May 10, 1984.  Denying defense counsel's request for a continuance, the trial court ordered that the sentencing hearing begin five days later, on Tuesday, May 15, 1984.  The jury returned two days later with the recommendation that Esparza be given the death penalty.  The trial judge accepted the jury's recommendation and sentenced Esparza to death.

In the years that followed, Esparza attacked his convictions and sentence via direct appeal, post-conviction relief, and a Rule 26(B) Application for Re-Opening.  His convictions were affirmed on direct appeal by both the Ohio Court of Appeals and the Ohio Supreme Court. *See State v. Esparza*, 1986 WL 9101 (Ohio Ct. App. Aug. 22, 1986); *State v. Esparza*, 529 N.E.2d 192 (Ohio 1988).[1]  Esparza's first petition for post-conviction relief, filed in November 1989, was denied without an evidentiary hearing.  *See State v. Esparza*, No. CR-83-6602 (Ohio Ct. Common Pleas June 18, 1990); *State v. Esparza*, 1992 WL 113827 (Ohio Ct. App. May 29, 1992); *State v. Esparza*, 602 N.E.2d 250 (Ohio 1992).  As set forth in greater detail *infra*, Esparza filed a successor post-conviction petition on November 14, 1991 based on documents he obtained in response to a public records request.  It appears this successor petition was not

_____

[1]    The United States Supreme Court thereafter denied Esparza's Petition for Certiorari. *Esparza v. Ohio*, 490 U.S. 1012 (1989).

-2-

ruled on by the state trial court.  Esparza's Rule 26(B) Application for Relief pursuant to *State v. Murnahan*, 584 N.E.2d 1204 (Ohio 1992) was denied by the state appellate court in May 1995. *See State v. Esparza*, 1995 WL 302302 (Ohio Ct. App. May 19, 1995); *State v. Esparza*, 660 N.E. 2d 1194 (Ohio 1996).

On September 5, 1996, Esparza filed his Petition for Writ of Habeas Corpus in this Court, raising fifty-six (56) claims for relief.  (ECF # 12).  Respondent filed his Return of Writ on October 25, 1996 (ECF # 16), and Esparza filed his Traverse on April 1, 1997 (ECF # 33). Esparza also filed motions for discovery, to expand the record, and for an evidentiary hearing. This Court, through Judge Kathleen O'Malley,[2] allowed Esparza to conduct limited discovery and granted his Motion for an Evidentiary Hearing.  (ECF # 41).  This hearing was conducted on August 17 - 18, 1999.  Seven witnesses testified, including one of Esparza's trial counsel (Keithly Sparrow) and an expert in neuropsychology (Dr. Michael Gelbort).

In a Memorandum of Opinion & Order dated October 13, 2000 (ECF # 132), the Court found four of Esparza's fifty-six claims for relief to be well-taken, i.e. Claims 1, 39, 44, and 52. In these Claims, Esparza argued that (1) the indictment was defective because it failed to contain all of the elements necessary to charge Esparza with capital murder (Claim 1); (2) the trial court violated his constitutional rights when it denied defense counsel's request for a continuance to prepare for the sentencing hearing (Claim 39); (3) he was deprived of his constitutional rights in light of the ineffective assistance of his counsel during the mitigation phase (Claim 44); and (4) the convictions and death sentence are unreliable due to cumulative

---

[2]    This matter was initially assigned to Judge Kathleen O'Malley.  It was re-assigned to the undersigned in 2011 after Judge O'Malley was appointed to the United States Court of Appeals for the D.C. Circuit.

-3-

error in the sentencing phase.  (Claim 52).

The Court agreed with Esparza as to each of these four Claims and granted Esparza's

Petition in part.[3]  Specifically, as to Claim 1, the Court held the indictment in the instant case

failed to contain an appropriate capital specification because it did not charge Esparza either

with being the "principal offender" or with having committed murder with "prior calculation

and design."  The Court further noted that, because the trial court based its jury instructions on

the indictment, the trial court failed to instruct the jury that in order to convict Esparza of

*capital* murder, as distinct from mere *aggravated* murder, it must find that he was either the

principal offender or that he committed the murder with prior calculation and design.  In light of

these errors, the Court found that "while Esparza was indicted for, and found guilty of,

aggravated murder, the same cannot be said with respect to the crime of capital murder."  (ECF

#132  at 74).  The Court then concluded that "the error which infected Esparza's trial by virtue

of the defective indictment" was a structural error and the imposition of the death penalty upon

him would be unconstitutional.  (ECF # 132 at 77).

With regard to Claim 44 (IAC during mitigation), the Court found defense counsel were

"grossly unprepared" for the mitigation phase of the trial and "the failure of defense counsel to

investigate Esparza's background was both objectively unreasonable and prejudicial."  (ECF #

132 at 146).  Specifically, the Court ruled Esparza's defense counsel was prejudicially deficient

because he (1) failed to collect records of Esparza's social and medical history; (2) failed to

investigate and present mitigating evidence regarding either Esparza's "extremely traumatic and

_____

[3]     The Court also explicitly considered and rejected Esparza's other 52 claims as being
without merit, including Esparza's *Brady* Claim (Claim 3).  (ECF # 132 at 43-45).

-4-

abusive childhood," his brain injury, or his mental deficiencies; and (3) failed to elicit meaningful mitigating evidence from the defense witnesses that were called during the mitigation phase.  In addition, the Court was particularly concerned about defense counsel's "uninformed decision" to request a pre-sentence investigation and psychological report.  The Court noted defense counsel had failed to understand that the entirety of this report would be introduced as evidence and failed to provide the Probation Department with any material to be considered in preparing this report.  The Court noted the PSI and psychological report introduced during mitigation was "devastating."  In light of the above, the Court concluded defense counsel's performance was objectively deficient and "[t]he proceedings here cannot be relied upon to have produced a just result."  (ECF # 132 at 144).

In so finding, the Court relied heavily upon the evidence adduced at the August 1999 federal evidentiary hearing.  Indeed, the Court specifically noted that, while the state courts had refused to hold an evidentiary hearing on this issue because they believed the claim could be determined by reference to the trial court record, "[t]his Court, after conducting its own hearing, finds . . . that the sentencing phase ineffective assistance of counsel claim is largely based on evidence *dehors* the record."  (ECF # 132 at fn 67).

With regard to Claim 39 (denial of continuance), the Court agreed with Esparza that the trial court violated his constitutional rights when it denied defense counsel's request for a continuance to prepare for the sentencing hearing.  The Court noted that "[t]he trial judge in this matter was aware both that he had appointed trial counsel less than eight weeks before trial was to commence and that counsel was relatively inexperienced in capital cases when appointed." (ECF # 132 at 148).  The Court further explained the trial judge was aware that, when the

continuance was requested, trial counsel had not prepared for the sentencing hearing but nevertheless denied counsel additional time to prepare.  Under such circumstances, the Court found it was "impermissibly arbitrary for the trial court to deny a continuance to allow time to prepare for a portion of the proceedings which literally could mean the difference between life and death for a defendant." (ECF # 132 at 149).

Finally, with regard to Claim 52 (cumulative error), the Court found that "Esparza's counsel's ineffectiveness during the sentencing phase of the trial, coupled with the trial judge's refusal to provide Esparza's counsel with a continuance to prepare for the sentencing phase of the trial, and the prejudicial effect of the blanket admission of the pre-sentence investigation report, including its psychological aspects, constitute cumulative error sufficient to mandate partial habeas corpus relief."  (ECF # 132 at 150-51).

Based on the above, the Court issued a writ of habeas corpus as follows: "[t]he respondent shall set aside Esparza's sentence of death and, instead, impose a life sentence under Ohio Rev. Code § 2929.03(A) for aggravated murder with no capital specification." (ECF #132 at 158).

Respondent appealed the Court's ruling with regard to Counts 1, 39, 44, and 52 (i.e. the defective indictment, denial of continuance, IAC during mitigation, and cumulative error claims).  Esparza cross-appealed, raising three grounds on which he asked the court to grant a general writ invalidating his convictions for Aggravated Murder and Aggravated Robbery. These grounds were (1) IAC at trial claims based on defense counsel's failure to interview witnesses (Counts 14, 15, 17 and 19(v)); (2) several *Brady* claims (Count 3); and (3) a claim based on the trial judge's refusal to recuse himself after conducting a witness certification

-6-

hearing (Count 7). On appeal, the Sixth Circuit agreed the indictment was constitutionally defective and affirmed the Court's decision to grant Esparza's Petition in part and vacate the death sentence. *Esparza v. Mitchell*, 310 F.3d 414 (6th Cir. 2002). In its decision, the court considered only that part of this Court's decision relating to Esparza's defective indictment claim and expressly stated that "we need not reach the alternate grounds on which Esparza asks us to vacate the death sentence: that he was denied effective assistance of counsel at sentencing, that his rights were violated when he was denied a continuance to prepare for the sentencing phase, and that his rights were violated through cumulative error in the sentencing phase." *Id.* at 422. In addition, the Sixth Circuit considered and rejected each of the three grounds raised by Esparza in his cross-appeal, including Esparza's *Brady* claim. *Id.* at 422-425.

Both Respondent and Esparza filed petitions for certiorari regarding different aspects of the Sixth Circuit's decision. Esparza's Petition related to the denial of the three claims for which he had sought a general writ, including his *Brady* claim. (ECF #147). Esparza's Petition was denied by the Supreme Court. *See* U.S. Supreme Court Docket, Case No. 02-8849.

Respondent's Petition was granted. In a per curiam decision dated November 3, 2003, the United States Supreme Court reversed the decision of the Sixth Circuit regarding Esparza's defective indictment claim. Specifically, the Supreme Court held the Sixth Circuit had erred in finding that the Ohio courts were objectively unreasonable in determining the defects in Esparza's indictment constituted "harmless error." *Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003). In a footnote, the Supreme Court specifically stated that "[o]ur decision, like the Court of Appeals', is limited to the issue presented here ... We express no view whether habeas relief would be available to [Esparza] on other grounds." *Id.* at fn 4. The Supreme Court then

-7-

remanded the case "for further proceedings consistent with this opinion." *Id*. at 19.  Shortly

thereafter, Esparza filed a "Petition for Rehearing of Decision and Judgment" in the Supreme

Court, which was summarily denied.

The case was remanded to the Sixth Circuit.  That court then issued an Order on

November 17, 2003, which stated, "[h]aving received the Supreme Court's opinion decided

November 3, 2003, in the above-entitled case which reverses and remands the case for 'further

proceedings consistent with this opinion,' we hereby remand the case to the District Court for

reconsideration in light of the Supreme Court's opinion." *See* 11/17/2003 Order (ECF # 151).

That same day, the Sixth Circuit issued a mandate "pursuant to the court's disposition that was

filed 11/17/03."  (ECF # 152).[4]

Once the case was remanded to this Court, Esparza moved for a stay to allow him to

pursue an *Atkins* claim in state court.  On February 20, 2004, the Court granted Esparza's

motion and agreed to hold proceedings in abeyance.  (ECF # 159).  Six years later, the Court

removed the case from abeyance and set a status conference for March 30, 2010.  (ECF # 166,

167).  During the status conference, counsel for Esparza explained he had determined Esparza's

---

[4]     Esparza filed a Motion to Recall Mandate, arguing the Sixth Circuit "should retain jurisdiction as Esparza won relief on several other issues in the District Court and those issues still need to be addressed by this Court."  (Docket for *Esparza v. Mitchell*, 6th Cir. Case No. 00-4615, Appellee's Motion to Recall Mandate at 2).  Specifically, Esparza maintained that "this Court's mandate contained no directive as to how the other issues on which Esparza was granted relief should be handled," and the need for further briefing and oral argument on these issues was "most appropriately addressed by this Court." (*Id*. at 4).  Respondent opposed Esparza's motion. On December 17, 2003, the Sixth Circuit issued a one-sentence Order denying Esparza's Motion to Recall Mandate.  This Order did not discuss the other issues on which Esparza had obtained relief in this Court's October 13, 2000 Opinion & Order or provide any further guidance as to how this Court should proceed on remand.

*Atkins* claim was without merit and had voluntarily dismissed it prior to any actual merits determination by the state court.  (Transcript of 3/30/2010 Status. Conf. at 2).  The Court then asked the parties to "brief the issue of both what you think the scope of the remand is in terms of the Court's jurisdiction, and you can provide me with any supplemental authority that relates to the issues that you believe are still to be alive for this Court's consideration."  *Id*. at 11.

Pursuant to the Court's Order, Respondent filed  a "Supplemental Answer" on June 15, 2010.  (ECF # 170).  Relying on numerous recent Supreme Court and Sixth Circuit cases, Respondent basically reargued the merits of the three additional claims upon which the Court granted Esparza's Petition, i.e. (1) IAC during mitigation, (2) denial of continuance, and (3) cumulative error in the sentencing phase of the trial.  Respondent maintained that, under new case law which he believed supported the denial of these claims, this Court should reverse its prior ruling and dismiss Esparza's Petition for Writ of Habeas Corpus in its entirety.

In his "Memorandum in Re Proceedings on Remand" (ECF # 174), Esparza defended the Court's Opinion & Order and asked the Court to (1)  reconsider and assess his denial of continuance and IAC during mitigation claims; (2) "re-adopt" the Court's review of these claims; and (3) grant Esparza's Petition for Writ of Habeas Corpus.[5]  He argued the law governing the claims in his case is "little changed" since the Court's prior ruling granting in part Esparza's Petition, and "cases decided since 2000 reinforce this Court's analysis and legal conclusions."  (ECF # 174 at 6).  Esparza then reargued the merits of his denial of continuance and IAC during mitigation claims, and asserted this Court should re-adopt its previous rulings

_____

[5]    Petitioner conceded his cumulative error claim (Claim 52) is no longer a justifiable basis for independent habeas relief.  (ECF # 174 at 16).

-9-

and grant Esparza's Petition.

On July 20, 2011, this Court ordered the parties to submit cross-briefs regarding the effect, if any, of the Supreme Court's recent decision in *Cullen v. Pinholster,* 131 S.Ct. 1388 (2011) on the instant case.[6] The parties submitted their cross-briefs on "the *Pinholster* effect" on August 29, 2011. (ECF # 178, 179). In his cross-brief, Respondent argued Esparza's IAC during mitigation and denial of continuance claims were adjudicated on the merits by the state courts and therefore, under *Pinholster*, this Court could not consider any of the testimony or evidence developed in the federal evidentiary hearing. Viewing these claims in the absence of such evidence, Respondent maintained the Court's previous decision granting relief on these claims was now unsupportable and must be vacated. (ECF # 178 at 12-18).

Esparza argued generally that *Pinholster* did not apply to (1) any claims that were not adjudicated on the merits by the state court, or (2) any state court decision which this Court has decided is an "unreasonable application of federal law" pursuant to § 2254(d)(1). He asked the Court to find that "there was no decision rendered by the Ohio courts that is subject to the limitations on relief in 28 U.S.C. § 2254(d)," and therefore *Pinholster* does not bar this Court from conducting further discovery regarding Esparza's claims.

On July 12, 2012, this Court issued a Memorandum of Opinion & Order denying Esparza's Petition. (ECF # 194). The Court first found it had the authority to re-evaluate that portion of this Court's October 13, 2000 Opinion & Order granting Esparza's Petition with

---

[6] In *Pinholster*, the Supreme Court held that federal habeas review of a claim adjudicated on the merits by a state court "is limited to the record that was before the state court." *Pinholster*, 131 S.Ct. at 1398.

respect to Esparza's denial of continuance and IAC during the mitigation phase claims.  (ECF #

194 at 17 - 19).  It then rejected Esparza's argument that the Court should re-evaluate all of

Esparza's other grounds for relief to determine whether they had been impacted by *Pinholster*

and to potentially order further discovery as to these claims.  (ECF # 194 at 19).  Specifically,

the Court found Esparza had waived his right to raise on remand any issues which he did not

raise during his cross-appeal to the Sixth Circuit.  *See JGR, Inc. v. Thomasville Furniture*

*Indus., Inc*., 550 F.3d 529, 532 (6th Cir. 2008) ("a party that fails to appeal an issue waives his

right to raise the issue before the district court on remand").  As to the three claims raised by

Esparza in his cross-appeal (including the *Brady* claim), the Court found that it would not

consider these claims on remand for the following reasons:

> In its decision, the Sixth Circuit expressly considered and rejected these three
> claims.  *Esparza v. Mitchell*, 310 F.3d 414, 422-25 (6th Cir. 2002).  Esparza
> thereafter filed a Petition for Writ of Certiorari to the Supreme Court
> regarding the denial of these three claims, which was denied.  (ECF # 147;
> U.S. Supreme Court Docket, Case No. 02-8849).  The Sixth Circuit's decision
> with regard to the three issues raised by Esparza on cross-appeal became final
> once the Supreme Court denied Esparza's Petition for Certiorari.  Thus, this
> Court does not have jurisdiction to reconsider those claims on remand.

(ECF # 194 at 20).

 In its review of Esparza's denial of continuance and IAC during the mitigation phase

claims, the Court first concluded it was limited under *Pinholster* to considering only that

evidence that was before the state courts and could not consider any evidence adduced during

the August 1999 federal evidentiary hearing.  (ECF # 194 at 33).  Because the Court's October

13, 2000 Opinion & Order relied heavily on evidence adduced during that hearing, the Court

found that its rulings in that previous Opinion regarding Esparza's denial of continuance and

IAC during mitigation claims must be vacated.  (ECF # 194 at 33).  The Court then proceeded

-11-

to analyze these claims under 28 U.S.C. §2254(d)(1), considering only that evidence that was before the state courts.  After exhaustively reviewing the state court record, the Court concluded the state courts' resolution of Esparza's denial of continuance and IAC during mitigation claims was not contrary to, or an unreasonable application of, clearly established federal law pursuant to § 2254(d).  (ECF # 194 at 59-63, 67-92).

On August 9, 2012, Esparza filed a Motion to Alter or Amend Judgment Pursuant to Rule 59(e) (ECF # 197).  Several weeks later, on August 23, 2012, he filed a Motion to Expand the Record Pursuant to Rule 5 (ECF # 200) and a "Supplemental Memorandum in Support" of his Motion to Alter or Amend Judgment (ECF # 201).  After requesting and receiving several extensions, Respondent filed a "Response in Opposition to Motion to Alter or Amend Judgment and Motion to Expand the Record" on December 7, 2012.  (ECF # 203).  Esparza filed his Reply Brief on January 14, 2013.  (ECF # 206).[7]

It is these Motions that are currently before the Court.

### III.  Analysis

#### A.  Motion to Expand the Record (ECF # 200)

Esparza asks the Court to expand the record in these habeas proceedings pursuant to Habeas Rule 5 to include two documents relating to his November 1991 Successor Post-Conviction Petition.  First, Esparza seeks to expand the record to include his "Motion For Remand to Trial Court," filed in the Sixth District Court of Appeals of Ohio on May 13, 1991. (ECF # 200-1).  Second, he asks the Court to expand the record to include a June 18, 1991

---

[7]      Prior to filing his Reply Brief, Esparza filed a "Motion to File Reply Brief and for Hearing on Rule 59(e) Motion." (ECF # 204).  On December 14, 2012, the Court marginally granted Esparza's request to file a Reply Brief, but denied his request for a hearing.

Decision and Journal Entry from the state appellate court denying Esparza's motion and directing counsel to file a successor post-conviction petition.  (ECF # 200-2).  Esparza claims these documents are part of the state court record but were not included in the Appendix to the Return of Writ.  He argues the habeas record should be expanded to include these documents because they are important to the resolution of his Motion to Alter or Amend Judgment.

In his Response in Opposition to Esparza's motions, Respondent states he "does not object to the Motion to Expand the Record (ECF # 200) as it relates to the two attached exhibits."  (ECF # 203 at 1).

The Rules Governing Section 2254 Cases give a respondent discretion to attach to his answer parts of the record that he considers relevant.  *See* Rule 5(c) of the Rules Governing Section 2254 Cases.  Pursuant to Rule 5, a district court "may order that the respondent furnish other parts of the existing transcripts or that parts of untranscribed recordings be transcribed or furnished."  *Id*.  Interpreting this Rule, the Sixth Circuit has recognized that expansion of the record in habeas cases "is not mandatory . . . and is left to the discretion of the trial judge."  *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988).  *See also Beuke v. Houk*, 537 F.3d 618, 653 (6th Cir. 2008).

Esparza's Motion to Expand the Record (ECF # 200) is granted.  The two documents which Esparza seeks to include in the habeas record are state court filings which relate to the procedural history and status of Esparza's 1991 Successor Post-Conviction Petition.  This issue is relevant to the resolution of Esparza's Motion to Alter or Amend Judgment.  Accordingly, and in light of the fact that Respondent does not oppose Esparza's motion, the Court will exercise its discretion under Habeas Rule 5 to expand the record to include the two documents

-13-

attached to Esparza's Motion to Expand the Record.[8]

      **B.    Motion to Alter or Amend Judgment Pursuant to Rule 59(e) (ECF # 197) and "Supplemental Memorandum in Support of his Motion to Alter or Amend" (ECF # 201)**

     Federal Rule of Civil Procedure 59(e) allows district courts to alter, amend, or vacate a prior judgment.[9]  *See* Fed. R. Civ. Proc. 59(e); *Huff v. Metropolitan Life Insur. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).  The purpose of Rule 59(e) is "to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings."  *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quoting *York v. Tate*, 858 F.2d 322, 326 (6th Cir. 1988)).  It permits district courts to amend judgments where there is: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."  *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

     The Sixth Circuit has explained that "Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment."  *Howard*, 533 F.3d at 475.  *See also Roger Miller Music, Inc. v.  Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1988).  Indeed,

---

    [8]    The Court notes the state appellate court's June 18, 1991 Decision and Journal Entry denying Esparza's Motion for Remand (ECF # 200-2) is, in fact, included in the Appendix. Specifically, it is attached as Exhibit 85 to Esparza's November 1991 Successor Post-Conviction Petition. (ECF # 16 at Exh. V (Exh. 85)).  However, in an abundance of caution, this Court will nevertheless grant Esparza's motion and expand the record to formally include this document.

    [9]    The federal civil rules apply in habeas cases "to the extent that they are not inconsistent with any statutory provisions or [the habeas rules] . . ." *See* Rule 12 of the Rules Governing Section 2254 Cases.

-14-

"Rule 59(e) allows for reconsideration; it does not permit parties to effectively 're-argue a case.'" *Howard*, 533 F.3d at 475 (quoting *Sault Ste. Marie Tribe*, 146 F.3d at 374).  The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court.  *Huff*, 675 F.2d at 122; 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810 -1, at 124 (2d ed. 1995).

Esparza filed his Motion to Alter or Amend Judgment on August 9, 2012.  (ECF # 197). In that Motion, he argues the Court's July 12, 2012 Opinion & Order incorrectly stated that the state courts denied his November 1991 Successor Post-Conviction Petition without an evidentiary hearing.  He argues that, in fact, this post-conviction Petition (hereinafter referred to as "1991 Successor Post-Conviction Petition") was never adjudicated by the state courts and remains pending in the Lucas County Court of Common Pleas.  Because this post-conviction Petition was not resolved by the state courts and includes a number of penalty phase claims, Esparza asserts his denial of continuance and IAC during mitigation claims were not "adjudicated on the merits" for purposes of § 2254(d).  Therefore, he argues, this Court should find that *Pinholster* is not applicable and it is not foreclosed from considering the evidence adduced during the August 1999 federal evidentiary hearing.  He further maintains that the Court should "reaffirm the relevant findings and conclusions" set forth in Judge O'Malley's October 2000 Opinion & Order and "at a minimum" grant habeas relief on his denial of continuance and IAC during mitigation claims.

Several weeks later, on August 23, 2012, Esparza filed a "Supplemental Memorandum in Support of his Motion to Alter or Amend Judgment."  (ECF # 201).  This "Memorandum" raises a number of additional arguments as to why this Court should reconsider its July 2012

Opinion & Order.[10]  Esparza's first argument relates to his first post-conviction Petition, filed in the Lucas County Court of Common Pleas in November 1989 (hereinafter "1989 Post-Conviction Petition").  Esparza maintains that, although he submitted numerous affidavits and other evidence *dehors* the record in support of his 1989 Post-Conviction Petition, the state courts refused to consider this evidence and denied his Petition solely on the basis of the trial court record.  He asserts that, because the state courts failed to consider "key evidence" submitted *dehors* the record, his 1989 Post-Conviction Petition was not "adjudicated on the merits" for purposes of § 2254(d).  Thus, Esparza argues, *Pinholster* does not apply and this Court should have conducted a *de novo* review.

Next, Esparza reiterates that his 1991 Successor Post-Conviction Petition was never adjudicated on the merits by the state courts and, therefore, *Pinholster* does not  foreclose this Court from considering the evidence adduced during the August 1999 federal evidentiary hearing.  He goes on to argue that the state courts' failure to adjudicate his 1991 Successor Post-Conviction Petition should not render his denial of continuance and IAC during mitigation claims unexhausted.  Rather, Esparza asserts this Court should declare these claims exhausted in light of the state courts' "inordinate delay" in adjudicating his claim.

Finally, Esparza argues at length that this Court should have considered his *Brady* claim on remand because the Supreme Court's decision impacted the Sixth Circuit's *Brady* analysis,

---

[10]    In this respect, Esparza's "Supplemental Memorandum" is not truly "supplemental" but, rather, is an attempt to raise a number of new arguments not previously raised in his Motion to Alter or Amend Judgment.  As this "Supplemental Memorandum" was filed 41 days after the Court's July 12, 2012 Opinion & Order, the Court questions whether it is timely filed pursuant to Rule 59(e).  However, as Respondent has not moved to strike Esparza's "Supplemental Memorandum," this Court will consider and address the arguments raised therein.

rendering it open to reconsideration on remand in this Court. Esparza maintains the Supreme Court reversed this Court's October 2000 Opinion & Order ruling on the defective indictment claim on the grounds that the defect was "harmless error" since "there was no evidence presented that anyone other than [Esparza] was involved in the crime." *See Esparza*, 540 U.S. at 18. Esparza now argues the *Brady* material at issue in his 1991 Successor Post-Conviction Petition indicates he may not have been the principal offender. Because the Supreme Court's analysis suggests that whether Esparza was the principal offender is a material issue, and this undermines the Sixth Circuit's rejection of his *Brady* claim, he argues this Court should now re-open his *Brady* claim on remand. He further argues this Court should consider his *Brady* claim *de novo* since the state courts have never adjudicated it.

In response, Respondent maintains Esparza's denial of continuance and IAC during mitigation claims set forth in the 1991 Successor Post-Conviction Petition were, in fact, adjudicated on the merits. While he acknowledges that he "misstated the [procedural] posture of the second post-conviction petition in his supplemental brief," he points out that twelve of the fourteen IAC claims set forth in that petition were previously considered and rejected on the merits by the state courts in connection with the 1989 Post-Conviction Petition. According to Respondent, the two IAC claims in the 1991 Petition not previously addressed by the state courts allege that counsel were ineffective for failing to (1) object to the imposition of the death penalty because defendant had not been convicted of a capital offense; and (2) advise Esparza to give an unsworn statement during mitigation. With respect to the first claim, Respondent argues it is now foreclosed by the Supreme Court's rejection of Esparza's defective indictment claim. With respect to the second claim, Respondent argues it is without merit because Esparza

-17-

cannot show he was prejudiced by his decision to forego an unsworn statement in mitigation.

Respondent also argues this Court is foreclosed from reconsidering Esparza's *Brady* claim at this point in the litigation under the terms of the Sixth Circuit's mandate.  Specifically, he maintains this Court should not re-open Esparza's *Brady* claim in light of the fact that the Sixth Circuit expressly considered and rejected this claim on the merits and the Supreme Court denied Esparza's Petition for Writ of Certiorari seeking relief on this claim.  Accordingly, Respondent argues Esparza's *Brady* claim is not open for reconsideration and "any attempt to disturb the Sixth Circuit's *Brady* ruling would conflict with the mandate." (ECF # 203 at 3).

The Court will discuss each of these arguments in turn.

### 1.      Esparza's 1989 Post-Conviction Petition

As set forth above, Esparza argues this Court erred when it determined the state post-conviction courts adjudicated his denial of continuance and IAC during mitigation claims on the merits for purposes of § 2254(d).  Citing *Brown v. Smith*, 551 F.3d 424 (6th Cir. 2008), Esparza maintains the state appellate court's consideration of these claims in connection with his 1989 Post-Conviction Petition failed to take into account "key evidence" that was attached to the Petition and  *dehors* the record.  This "key evidence" includes (1) affidavits from fourteen family members and/or friends asserting they were either not interviewed at all by defense counsel or were interviewed but not asked to testify on Esparza's behalf; (2) affidavits from Peter Esparza, Virginia Gonzalez, and Ralph Grennay, asserting they testified during mitigation but possessed additional information which they were not requested to include in their testimony; and (3) an affidavit from psychologist Julia Hawgood which concluded that neither

-18-

defense counsel nor the jury had a "fully developed understanding" of Esparza.[11]   Having failed
to consider this critical evidence, Esparza argues the state appellate court could not have fully
adjudicated his claims on the merits for purposes of § 2254(d).  In the absence of an
"adjudication on the merits," Esparza asserts *Pinholster* does not apply and this Court should
have considered the evidence adduced during the August 1999 federal evidentiary hearing and
found defense counsel were ineffective for failing to conduct a thorough mitigation
investigation.

The Court finds this argument to be without merit.  As an initial matter, the Court
disagrees with Esparza's statement that the state courts failed to consider the evidence *dehors*
the record submitted in connection with his 1989 Post-Conviction Petition.  In its Findings of
Fact and Conclusions of Law denying the 1989 Petition, the state trial court first concluded
Esparza was precluded under the doctrine of *res judicata* from raising his IAC claims to the
extent they did not resort to evidence *dehors* the record.  However, the trial court further found
that "[t]o the extent that Mr. Esparza has produced evidence *dehors* the record, *res judicata* will
not be a proper basis for dismissing Mr. Esparza's petition."  (ECF # 16 at Exh. Q, p. 5).  It then
held as follows:

> Although *res judicata* does not bar Mr. Esparza from raising some of his
> ineffective assistance of counsel claims, **the next issue is whether Mr.**
> **Esparza has set forth evidentiary documents containing sufficient**
> **operative facts to demonstrate the claims.**
>
> In State v. Jackson (1980), 64 Ohio St.2d 107, the Supreme Court of Ohio
> held that: "In a petition for post-conviction relief, which asserts ineffective
> assistance of counsel, the petitioner bears the initial burden to submit

---

[11]    For a more detailed description of the evidence submitted by Esparza during post-
conviction, see this Court's July 12, 2012 Opinion & Order at 52-53.

evidentiary documents containing sufficient operative facts to demonstrate
the lack of competent counsel and that the defense was prejudiced by
counsel's ineffectiveness." *Id.* at syllabus. *See also* State v. Kapper,
(1983), 5 Ohio St.3d 36, 38-39; and State v. Pankey (1981), 68 Ohio St.2d
58.

The Jackson court further stated that: "Broad assertions without a further
demonstration of prejudice do not warrant a hearing for all post-conviction
petitions. General conclusory allegations to the effect that a defendant has
been denied effective assistance of counsel are inadequate as a matter of
law to impose an evidentiary hearing." *Id.* at 111. (Citations omitted).

Here, Mr. Esparza's general conclusory allegations are wholly inadequate
to require an evidentiary hearing. These allegations, **although supported
by affidavit,** are merely attacks on attorneys DeNune and Sparrow's
strategy at trial and at the mitigation hearing. *See* Strickland v.
Washington (1984), 466 U.S. 668 (trial strategy is not a proper basis for a
claim based on ineffective assistance of counsel). Consequently, Mr.
Esparza has failed to demonstrate how trial counsel was incompetent or
how counsel's alleged incompetence prejudiced his defense. **Mr.
Esparza has not met his burden of submitting documentary evidence
containing sufficient operative facts to establish a claim of ineffective
assistance of counsel.**

(ECF # 16 at Exh. Q, p. 5-6) (emphasis added).

On appeal, the state appellate court acknowledged Esparza's evidence *dehors* the record,

expressly noting Esparza supported his claim with (1) "the affidavits of fourteen family

members and/or friends who asserted that they were either not interviewed at all by Esparza's

trial counsel, or they were interviewed but were not asked to testify on defendant's behalf" and

(2) "the affidavits of three witnesses who did testify at the penalty phase but who assert that

they possess additional information which they were not requested to include in their

testimony." *State v. Esparza*, 1992 WL 113827 at *5 (Ohio App. 6th Dist. May 29, 1992). The

court then carefully reviewed all of the evidence presented during the mitigation phase of the

trial and concluded that "trial counsel's failure to interview or call all potential mitigation

witnesses did not amount to ineffective assistance of counsel. *Id*. at * 6.

While the state appellate court did state Esparza's IAC during mitigation claim could be determined  "without resort to evidence *dehors* the record," it made this determination in the context of concluding that the trial court "did not err in dismissing [Esparza's IAC during mitigation] claim without a hearing."  *Id*. at * 7.  In other words, the state appellate court concluded the trial court did not err in determining Esparza had failed to "set forth evidentiary documents containing sufficient operative facts to demonstrate the claims."  Necessarily implied in this statement (and as is evident from a review of the entirety of the post-conviction state court decisions) is that both state trial and appellate courts reviewed and considered the evidence *dehors* the record and determined it was insufficient to warrant either a hearing or relief on Esparza's IAC claims.  This is not the same thing as failing to consider the evidence *dehors* the record, as Esparza now suggests, nor is it an indication the state courts failed to adjudicate Esparza's IAC during mitigation claim on the merits in connection with his 1989 Post-Conviction Petition.  To the contrary, the Court finds the state post-conviction courts clearly considered Esparza's evidence *dehors* the record and decided this evidence was insufficient to warrant either an evidentiary hearing or relief on the merits when considered in light of the evidence presented during the mitigation phase of the proceedings.

Moreover, even if the state appellate court did fail to consider this evidence in connection with the 1989 Post-Conviction Petition, the Court finds Esparza's reliance on *Brown v. Smith*, 551 F.3d 424 (6th Cir. 2008) is misplaced.  In *Brown*, the Sixth Circuit held the "deferential standard of review" set out in § 2254(d) "applies only to a claim that has been adjudicated on the merits in State court proceedings."  *Brown*, 551 F.3d at 428.  The panel

-21-

concluded that "whenever new, substantial evidence supporting a habeas claim comes to light during the proceedings in federal district court," we must apply the "pre-AEDPA standard of review: *de novo* for questions of law (including mixed questions of law and fact), and clear error for questions of fact." *Id.* at 429.  In that case, the Court found Petitioner's ineffective assistance of counsel claim should be reviewed under the pre-AEDPA standard of review because the state court did not have counseling records from the victim's therapist which could have provided additional grounds for impeaching  the victim's testimony.  Noting Petitioner was not at fault for failing to obtain the records during post-conviction proceedings, the court found that "the absence of the counseling records before the [state court]. . . ., combined with that court's explicit statement that its review was 'limited to mistakes apparent on the record,' means that there is no relevant state court adjudication to which this court can defer." *Id*. at 429-30.  Applying the pre-AEDPA standard of review, the court concluded Petitioner had demonstrated both deficient performance and prejudice and was, thus, denied effective assistance of counsel.

As an initial matter, *Brown* is factually distinguishable from the instant case.  *Brown* dealt with evidence that was newly discovered during federal habeas proceedings and which Petitioner could not be held responsible for failing to uncover during post-conviction.  The evidence at issue in the instant case, however, consists of material that Esparza did in fact present to the state courts during post-conviction but which the state courts allegedly failed to consider.  Moreover, even if *Brown* might have some relevance to Esparza's claim, the Sixth Circuit has remarked "the Supreme Court's recent decision in *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011) raises serious questions about *Brown*'s continuing vitality." *McCoy v. Jones*, 2012

-22-

WL 593117 at *3 (6th Cir. Feb. 24, 2012).  While the Sixth Circuit has not yet fully considered the effect of *Pinholster* on the *Brown* decision,[12]  it has indicated that there are "serious questions" about whether *Brown* is consistent with *Pinholster*.  *See McCoy*, 2012 WL 593117 at * 3.  *See also Williams v. Lafler*, 2012 WL 3326301 at * 3 (noting that "[t]he tension between *Brown* and *Pinholster* is obvious" and *Pinholster* "raises some doubt as to whether *Brown* remains good law").  Thus, even if *Brown* were applicable,  this Court cannot say it was "clear error" under Rule 59(e) to find that the state courts' resolution of this claim in connection with Esparza's 1989 Post-Conviction Petition constituted an "adjudication on the merits."

Accordingly, the Court finds this argument is without merit and does not justify reconsideration of this Court's July 12, 2012 Opinion & Order under Rule 59(e).

## 2.    Esparza's 1991 Successor Post-Conviction Petition

Esparza next argues this Court misstated the procedural posture of his 1991 Successor Post-Conviction Petition.  In its July 12, 2012 Opinion & Order, this Court stated "Esparza's first and second petitions for post-conviction relief were both denied without an evidentiary hearing."  (ECF # 194 at 3).  Later in the Opinion, the Court further noted the following in a footnote:

> In November 1991, after receiving documents from the City of Toledo pursuant to a public records request, Esparza filed a second petition for post-conviction relief in the Lucas County Court of Common Pleas.

---

[12]    *See Walsh v. Lafler*, 2011 WL 5041418 at ** 4 (6th Cir. Oct. 25, 2011) (noting "[t]his Circuit has not yet had occasion to consider the effect of *Pinholster*" on *Brown* but  that it need not reach this issue because even under the less deferential, pre-AEDPA standard, Welsh had not presented grounds for habeas relief); *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011)(assuming, without deciding, that petitioner's ineffective assistance claim was subject to the less deferential, pre-AEPDA standard of review where the state court did not have key records before it).

> (ECF # 16 at Exh. V).  As of the filing of the Petition and Return, the
> state trial court had not yet ruled on Esparza's successive petition.
> However, in its Supplemental Brief filed August 29, 2011, Respondent
> states the trial court denied this petition and that the state appellate court
> affirmed. (ECF # 178 at 2).

(ECF # 194 at 55, fn. 17).  In his Motion to Alter or Amend, Esparza maintains this is incorrect

and that, in fact, the state courts never ruled on his 1991 Successor Post-Conviction Petition.

Respondent now concedes, in his Response in Opposition, that he "misstated the posture of the

second post-conviction petition in his supplemental brief."  (ECF # 203 at 2).

Based on the state court filings attached to Esparza's Motion to Expand the Record

(ECF # 200) and admitted to the habeas record *supra*, the procedural history surrounding the

1991 Successor Post-Conviction Petition appears to be as follows.  In November 1989, Esparza

filed his first Post-Conviction Petition (i.e. the 1989 Post-Conviction Petition), raising fifty

claims for relief; including allegations of trial court error in denying his motion for continuance

and IAC during mitigation.  (ECF # 191-1).  Subsequently, on June 8, 1990, Esparza submitted

a public records request pursuant to Ohio's Public Records Act, Ohio Rev. Code § 149.43, to

the Toledo Police Department seeking the following documents: (1) "records pertaining to and

relating to the investigation (including suspects other than Gregory Esparza) of the 1983

homicide of Melanie Gerschultz;" and (2) "records pertaining to and relating to the

investigation, arrest, detention, interrogation, prosecution, and the like, of Gregory Esparza."

(ECF # 200-1 at 7).  On June 19, 1990, the City of Toledo declined to produce the requested

documents, citing litigation pending in the Ohio Supreme Court arising from another, unrelated

denial of a public records request.  (ECF # 200-1 at 10).

On October 10, 1990, the Ohio Supreme Court decided this unrelated litigation, holding

-24-

an inmate who has exhausted his direct appeals may employ the Ohio Public Records Act to support his/her petition for post-conviction relief.  *See State ex rel. Clark v. City of Toledo*, 54 Ohio St.3d 55 (1990).[13]  Shortly thereafter, on November 6, 1990, the City of Toledo notified Esparza it had "compiled 118 documents (119 page sides)" and "[i]nformation has been redacted only from 18 of these pages (Exhibits 1 - 15) pursuant to O.R.C. Sections 149.43(A)(2)(a), (b), (d) and (A)(4)."  (ECF # 200-1 at 12).  These 118 documents were provided to counsel for Esparza on March 8, 1991.  (ECF # 200-1 at 13).

Meanwhile, on June 18, 1990, the state trial court dismissed Esparza's first post-conviction Petition (i.e. his 1989 Post-Conviction Petition) without an evidentiary hearing.  On July 5, 1990, Esparza filed a Motion for  Reconsideration, arguing (among other things) that his Petition should not be dismissed in light of the fact that the City of Toledo had not yet responded to his public records request.  (ECF # 200-1 at 4).  It is unclear whether this motion was ever ruled upon, but the record is clear that Esparza appealed the denial of the 1989 Post-Conviction Petition.  On May 13, 1991, after having received the 118 documents from the City of Toledo, Esparza filed in the state appellate court a "Motion for Remand to the Trial Court," arguing that "[r]emand is necessary to permit Mr. Esparza to supplement his previously filed post-conviction petition with evidence provided by the State of Ohio pursuant to Mr. Esparza's request for public records."  (ECF # 200-1 at 1).  On June 8, 1991, the state appellate court denied Esparza's motion and instead suggested he file a successor post-conviction petition in the Lucas County Court of Common Pleas.  (ECF # 200-2 at 1-3).  Esparza thereafter filed the

---

[13]    The Ohio Supreme Court later reversed itself on this issue in *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420 (1994).

1991 Successor Post-Conviction Petition in the state trial court on November 14, 1991.  (ECF #
16 at Exh. V).

Esparza maintains, and Respondent appears to concede, that the 1991 Successor Post-
Conviction Petition was never ruled on by either the state trial or appellate court.  Because this
Petition contains several penalty phase claims, Esparza argues his denial of continuance and
IAC during mitigation claims were not "adjudicated on the merits" for purposes of § 2254(d).
Therefore, he argues, *Pinholster* is not applicable and these claims are subject to *de novo*
review.  He further asserts that, because the proper review of these claims is *de novo* and allows
for consideration of the evidence adduced during the August 1999 federal evidentiary hearing,
this Court should (1) find that Judge O'Malley's prior analysis of these claims in her October
2000 Opinion & Order constitutes "law of the case," and (2) grant Esparza habeas relief.  (ECF
# 201 at 12 - 14).

While Respondent acknowledges the state courts did not rule on Esparza's 1991
Successor Post-Conviction Petition, he argues the vast majority of the IAC claims set forth in
that Petition were previously considered and rejected on the merits by the state courts in
connection with the 1989 Post-Conviction Petition.  Moreover, he claims only two claims set
forth in that Petition were arguably not previously considered and these claims have no merit.
Accordingly, he asserts the failure of the state courts to rule on the 1991 Successor Post-
Conviction Petition does not translate into a finding that Esparza's denial of continuance and
IAC during mitigation claims were not adjudicated on the merits for purposes of § 2254(d).

Based on the above, the Court agrees with Esparza that it misstated the procedural
posture of his 1991 Successor Post-Conviction Petition, as it now appears the state courts have

not, in fact, ruled on that Petition in the over twenty years since it was filed.  Accordingly, the Court grants Esparza's Motion to Alter or Amend to the extent it seeks clarification of the procedural history and posture of his 1991 Successor Post-Conviction Petition.

However, the Court must still determine what impact, if any, this may have on its resolution of Esparza's denial of continuance and IAC during mitigation claims as set forth in his federal habeas Petition.  After careful review of the 1991 Successor Post-Conviction Petition, the Court determines for the following reasons that its analysis of Esparza's habeas claims is not changed by the fact the state courts failed to rule on this post-conviction Petition.

Esparza correctly notes his 1991 Successor Post-Conviction Petition sets forth constitutional claims based on (1) trial court error in denying his motion for continuance to prepare for mitigation proceedings ("Claim 22"); and (2) IAC during mitigation ("Claim 27").  (ECF # 16 at Exh. V).  However, in order to demonstrate his federal habeas claims were not "adjudicated on the merits" for purposes of § 2254(d), Esparza must show that his denial of continuance and IAC during mitigation claims as presented in the 1991 Successor Post-Conviction Petition (i.e. Claims 22 and 27) are different in some material respect from the claims already considered and rejected by the state courts on direct appeal or in connection with his 1989 Post-Conviction Petition.

Esparza fails to do so.  While he makes passing reference to the fact that he raised these claims via Claims 22 and 27 of his 1991 Successor Post-Conviction Petition, Esparza does not discuss these claims, identify the manner in which they differ from the denial of continuance and IAC claims previously adjudicated by the state courts, or explain how any of the exhibits attached to his 1991 Successor Post-Conviction Petition support or in any way relate to either of

-27-

these claims.  In fact, Esparza does not discuss these exhibits in any of the post-judgment motions filed with this Court.  Although he makes much of the fact that his 1991 Successor Post-Conviction Petition was filed in response to the 118 documents newly obtained from his public records request, Esparza does not explain to this Court (1) how any of these documents are relevant to his denial of continuance or IAC during mitigation claims in the first instance, or (2) in what respect these documents present information to the state court that it had not already considered.  Moreover, in his Reply Brief, Esparza does not address Respondent's arguments that the denial of continuance and IAC during mitigation claims presented in the 1991 Successor Post-Conviction Petition were already adjudicated by the state courts in connection with the 1989 Post-Conviction Petition.

Upon its own review, this Court finds the claims and exhibits set forth in the 1991 Successor Post-Conviction Petition are not sufficiently different from Esparza's previous post-conviction Petition to support a  finding that his federal denial of continuance and IAC during mitigation claims were not "adjudicated on the merits" for purposes of § 2254(d).  The majority of the exhibits attached to the 1991 Successor Post-Conviction Petition consist of Toledo Police Department records relating to the investigation of the murder of Melanie Gerschultz, including witness statements, police reports, polygraph reports, regional crime lab reports, search warrant affidavits, etc.  *See* ECF # 16 at Exh. V (Exhibits 1- 69).  Although some of these exhibits contain references to Esparza's drug use, troubled childhood, and dysfunctional family, the Court notes this information was fully presented to the jury during mitigation via the testimony of Esparza's family members and the introduction of Joint Exhibit A (i.e. Esparza's "Family File"), the Presentence Investigation Report, and Esparza's mental examination report.  In the

-28-

absence of any argument from Esparza to the contrary, the Court finds none of these exhibits contain relevant information that had not already been presented to and considered by the state courts in connection with Esparza's denial of continuance or IAC during mitigation claims.

The Court could identify only two exhibits which might possibly be considered relevant to the claims at issue.  The first is the Affidavit of William A. Seman, dated January 4, 1990. (ECF # 16 at Exh. V (Exh. 70)).[14]  In his Affidavit, Dr. Seman avers that (1) he had only a brief discussion with defense counsel prior to his mitigation testimony; (2) the procedures used to examine Esparza "deviated from standard procedures" in a variety of respects; (3) "time constraints" precluded him from conducting collateral interviews with family members or significant others in Esparza's life; and (4) he did not receive any direction or guidelines regarding what to include in or exclude from his mental examination report from the court or any of the attorneys in the case.  (ECF # 16 at Exh. V (Exh. 70)).

The Court finds this Affidavit does not set forth any information that was not already presented to and considered by the state courts in resolving Esparza's IAC during mitigation claims.  As an initial matter, the Court notes Esparza submitted Dr. Seman's affidavit to the state trial court in connection with his Motion to Reconsider the denial of his 1989 Post-Conviction Petition.  *See* ECF # 16 at Exh. V (Exh. 84).[15]  Thus, this Affidavit was presented to

_____

[14]    At the time, Dr. Seman and Dr. Charlene Cassell were psychologists at the Court Diagnostic & Treatment Center ("CDTC") in Lucas County, Ohio. As set forth in this Court's July 12, 2012 Opinion & Order, Drs. Seman and Cassell examined Esparza, prepared a mental examination report, and testified during mitigation regarding the results of that examination.  (ECF # 194 at 42-45).

[15]    In his state court motion for reconsideration, Esparza argues that "on November 17, 1989, counsel for Petitioner Esparza interviewed Dr. William A. Seman, who agreed to provide counsel an affidavit to be used to support several of Petitioner's post-conviction

the state trial court but was apparently deemed insufficient to warrant reconsideration of its

denial of Esparza's 1989 Post-Conviction Petition.

Moreover, as set forth in detail in this Court's July 2012 Opinion, defense counsel

carefully examined Dr. Seman (and Dr. Cassell) regarding the flaws in the mental examination

report. Specifically, counsel elicited testimony from Dr. Seman that, prior to Esparza's case,

the CDTC had only been involved in two mental examinations conducted for purposes of

capital mitigation hearings. (Tr. Mit. Hrg. at 100). Counsel also elicited testimony from both

Drs. Seman and Cassell that, while a social worker is normally involved to obtain records and

speak with relevant family members in these types of review, they did not use a social worker in

conducting Esparza's mental examination due to the "urgency of the referral." (Tr. Mit. Hrg. at

101-2, 168-69). Both doctors further testified they did not have any discussions with members

of Esparza's family or foster parents, and did not have access to psychological testing that may

have been conducted by many of the juvenile institutions where Esparza had been committed

over the years. (Tr. Mit. Hrg. at 106-7, 169). In light of the above, the Court finds the

information contained in Dr. Seman's Affidavit is largely cumulative to his mitigation

testimony, which was already presented to and considered by the state courts in the context of

Esparza's IAC during mitigation claim. *See State v. Esparza*, 39 Ohio St.3d 8, 10-11 (1988).

The second exhibit of arguable relevance to the instant motion is the Affidavit of

Gregory Esparza, which is dated October 29, 1991 and attached as Exh. 90 to the 1991

---

claims. On the date for filing the Petition, counsel had not yet received the expected
affidavit from Dr. Seman, so could not include it in the Petition. This Court could easily
review the evidence now pursuant to R.C. 2953.21(F) and/or Rule 60(b)(5) of the Ohio
Rules of Civil Procedure." (ECF # 16 at Exh.V (Exh. 84)).

Successor Post-Conviction Petition.  (ECF # 16 at Exh. V (Exh. 90)).  In this Affidavit, Esparza explains (1) there were no Hispanic persons on the jury in his case; and (2) he did not testify at either phase of his trial but would have done so had he "more fully understood the importance of [his] testimony" at the mitigation phase.  (ECF # 16 at Exh. V (Exh. 90)).  Esparza does not explain what he would have said had he given an unsworn statement during mitigation.

The Court finds Esparza's Affidavit is insufficient to demonstrate that the state courts failed to adjudicate his IAC during mitigation claim on the merits.  As an initial matter, Esparza does not provide any explanation as to why counsel could not have obtained and submitted his Affidavit in connection with the 1989 Post-Conviction Petition.  Thus, it seems highly unlikely the state courts would have considered it in a successive post-conviction petition.  Moreover, even if the state courts would have considered it, it is difficult to believe this Affidavit (which is composed of only three short paragraphs) would have been remotely sufficient to demonstrate either deficient performance or prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), particularly given the fact Esparza fails to describe what he would have said had he given an unsworn statement.  Standing alone, the Court finds this Affidavit is clearly insufficient to demonstrate that the state courts failed to adjudicate Esparza's IAC during mitigation claims.[16]

---

[16]    The remaining exhibits to the 1991 Successor Post-Conviction Petition consist primarily of state court filings, excerpts from the trial transcript, and documents relating to Esparza's public records request.  *See e.g.* ECF # 16 at Exh. V., Exh. 71 (excerpt from trial transcript); Exhs. 72-73 (state court discovery filings); Exhs. 74-77 (copies of sealed envelopes which contained stenographic notes regarding trial proceedings); Exhs. 79-81 (letters relating to Esparza's public records request); Exh. 82 (Petition for Writ of Mandamus filed by Esparza in state appellate court regarding redacted documents provided in response to public records request); Exh. 83 (Esparza's Indictment); Exh. 84 (motion to reconsider filed in state trial court regarding denial of 1989 Post-Conviction Petition); Exh. 85 (state appellate court ruling denying motion to remand to trial court); Exh. 89 (juror forms); Exh. 92 (state trial court sentencing opinion); and Exh. 93 (state appellate court

Accordingly, and for all the reasons set forth above, the Court rejects Esparza's argument that this Court should alter or amend its judgment on the grounds the state courts failed to rule on his 1991 Successor Post-Conviction Petition.  Having so found, the Court further finds it properly concluded Esparza's denial of continuance and IAC during mitigation claims were subject to review under § 2254(d) and the state courts' decisions were, therefore, entitled to AEDPA deference.  The Court, thus, properly applied *Pinholster* to exclude from consideration any evidence adduced during the August 1999 federal evidentiary hearing. Esparza's arguments to the contrary are without merit and denied.[17]

### 3.     *Brady* Claim

Finally, Esparza argues this Court should amend its July 12, 2012 Opinion & Order to find his *Brady* claim is subject to *de novo* reconsideration on remand.  He maintains that "[w]hile the federal courts have reviewed both the Eighth Amendment improper capital indictment claim and a *Brady* claim as it pertains to the aggravated murder conviction, the courts have never determined what the outcome of the penalty phase would have been if the State had indicted Mr. Esparza as the 'principal offender' of the murder, yet not suppressed

---

direct appeal opinion).  As these documents are part of the state court record, the Court finds that none of them support Esparza's argument that the state courts failed to adjudicate his denial of continuance and IAC during mitigation claims. The Court further notes that four exhibits (i.e. Exhibits 48, 52, 88 and 91) are missing from the 1991 Successor Post-Conviction Petition as submitted to this Court in the Appendix.  However, as Esparza does not explain how any of these exhibits have any relevance to his denial of continuance or IAC claims, the Court assumes they do not support the arguments presented in his Motion to Alter or Amend.

[17]     In light of the above, the Court further finds that Esparza's denial of continuance and IAC during mitigation claims are not unexhausted by virtue of the fact that the state court failed to rule on the 1991 Successor Post-Conviction Petition.

evidence that he was not actually the principal offender."  (ECF # 206 at 1).  Specifically, Esparza argues that, although the Sixth Circuit ruled on the *Brady* claim before it, it analyzed that claim in the context of an aggravated murder charge not a capital murder charge, since it had already found that the indictment lacked a capital specification and was unconstitutional. Esparza notes the Sixth Circuit found the *Brady* evidence was exculpatory because it indicated that "another individual may have been involved in the crime."  *Esparza*, 310 F.3d at 424.  The court concluded such evidence did not prejudice the outcome because "none of the suppressed evidence tend[ed] to show that Esparza was uninvolved in the robbery and shooting; it merely show[ed] that he may not have been the principal offender."  *Id*.  While Esparza maintains the Sixth Circuit never adjudicated the "capital aspects of the *Brady* claim," he argues it found that even under a harmless error standard "the problems with the indictment were material to the outcome of the capital case and that relief would be warranted under that standard."  (ECF # 206 at 3).

 Esparza then argues the Supreme Court also failed to review the "capital aspects" of his *Brady* claim.  Rather, Esparza maintains, the Supreme Court only considered "the correct standard a court should use when confronted with a faulty jury instruction that omits 'principal offender' language, when there is no evidence presented that another individual may have been involved in the crime."  (ECF # 206 at 3).  Esparza further argues:

> Based on the evidence before the Ohio courts– that Mr. Esparza was the only individual involved in the crime– the Supreme Court ruled that any error in the indictment and jury instruction was harmless. [*Esparza*, 540 U.S. at] 19. ("There was no evidence presented that anyone other than respondent was involved in the crime or present at the store").
>
> The Court did not consider the impact of the *Brady* evidence on the absence of the death specification.  In fact, in a footnote, the Court

-33-

specifically discounted the *Brady* evidence from its analysis because it was not relevant to the trial phase issue before it. It observed:

"The [Sixth Circuit] Court of Appeals noted evidence brought to light for the first time in the habeas proceeding in the District Court that suggested there might have been another participant in the crime, Joe Jasso.  The jury, however, was not presented with this evidence at trial, and thus it has no bearing on the correctness of the Ohio Court of Appeals' decision that the State need not charge a defendant as a principal offender if the failure to so charge is harmless error."

*Id*. at 3.  Thus, the Supreme Court never considered the impact of the *Brady* evidence on the capital specification, jury instruction, or death sentence because it had no bearing on its decision.

(ECF # 206 at 4).

Esparza now argues that "no Court, including this one, has ever addressed what the outcome of the trial would have been if the State had indicted Mr. Esparza using the proper 'principal offender' death specification language but had not suppressed the evidence that Mr. Esparza was not actually the principal offender."  (ECF # 206 at 6).  He urges the Court to "remedy this injustice" and grant Mr. Esparza habeas relief on his *Brady* claim.

Respondent argues the Court is foreclosed from reconsidering Esparza's *Brady* claim under the terms of the Sixth Circuit's mandate.  Specifically, he maintains this Court should not re-open Esparza's *Brady* claim because the Sixth Circuit expressly considered and rejected this claim on the merits and the Supreme Court denied Esparza's Petition for Writ of Certiorari seeking relief on this claim.  Accordingly, Respondent argues Esparza's *Brady* claim is not open for reconsideration and "any attempt to disturb the Sixth Circuit's *Brady* ruling would conflict with the mandate."  (ECF # 203 at 3).

Esparza argues Respondent's reading of the mandate is overly restrictive.  He argues the remand order is a general remand and "[b]ecause the Supreme Court specifically refrained from

-34-

reviewing the *Brady* evidence and, in fact, expressly stated in a footnote that it 'express[ed] no view whether habeas relief would be available to [Mr. Esparza] on other grounds,' [citation omitted], review of other avenues of relief is consistent with the Supreme Court's opinion." (ECF # 206 at 7).

As an initial matter, the Court notes Esparza failed to raise this particular argument in any of the supplemental briefing submitted to this Court post-remand.  (ECF # 174, 179). While he did maintain the Court should consider his *Brady* claim because it had not been adjudicated on the merits by the state courts, he failed to raise any argument that the Supreme Court's decision on the defective indictment claim impacted the adjudication of his *Brady* claim in the context of a capital (as opposed to aggravated) murder charge.  In other words, Esparza raises this particular argument for the first time in his Rule 59(e) motion.  On this basis alone, the Court finds reconsideration is not warranted since it is well-established that "Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment." *Howard*, 533 F.3d at 475.  *See also Roger Miller Music, Inc*., 477 F.3d at 395; *Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374.

Even considering this argument, however, the Court finds that it is without merit.  After the Supreme Court reversed the Sixth Circuit and found the state courts' were not objectively unreasonable in holding the defects in the indictment to be "harmless error," Esparza filed a "Petition for Rehearing of Decision and Judgment" in the Supreme Court on November 28, 2003.  Therein, Esparza expressly argued the Supreme Court had erred because it failed to take into account the suppressed evidence (obtained through Esparza's public records request) indicating Esparza was not the "principal offender."  He described  his efforts to obtain the

-35-

suppressed evidence, as well as the procedural history and status of his 1991 Successor Post-

Conviction Petition.  Moreover, Esparza highlighted some of the exculpatory evidence

contained in this *Brady* material and discussed the importance of this evidence in the context of

the Supreme Court's "faulty premise" that the defects in the indictment were "harmless"

because there was no evidence that he was not the principal offender.  Based on the above,

Esparza argued as follows:

> Uninformed of this powerful and unrefuted evidence that Esparza was not
> alone and, more to the point, that he was not the killer of Melanie
> Gerschultz, and unaware that he had presented much of this evidence to
> the State courts, this Court reversed and remanded Esparza's case to the
> Sixth Circuit Court of Appeals.  Instead, this court should vacate its
> decision and deny certiorari.
>
> In the alternative, this Court should remand this Case to the Sixth Circuit,
> instructing that court to remand to the District Court for determinations
> under AEDPA whether the State Court of Appeals' decision "was based
> on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding," 28 U.S.C. § 2254(d)(2) and
> whether the facts relied upon by that court are entitled to a presumption of
> correctness or whether they were rebutted by clear and convincing
> evidence. § 2254(e)(2).

(Petition for Rehearing at p. 8).  The Supreme Court summarily denied Esparza's Petition for

Rehearing on January 12, 2004.  *See Mitchell v. Esparza*, 540 U.S. 1142 (Jan. 12, 2004).

Meanwhile, Esparza filed a "Motion to Recall Mandate" in the Sixth Circuit on

November 17, 2003, arguing "this Court should retain jurisdiction as Esparza won relief on

several other issues in the District Court and those issues still need to be addressed in this

Court."  (Motion to Recall Mandate at p. 1-2).  While this would have been a logical time and

place to do so, Esparza did not ask the Sixth Circuit to recall the mandate for the additional

reason that it needed to address the alleged impact of the Supreme Court's decision on the Sixth

Circuit's analysis of his *Brady* claim.  The Sixth Circuit denied Esparza's "Motion to Recall Mandate" on December 17, 2003.

Based on the above, the Court finds it would not be appropriate to re-open Esparza's *Brady* claim at this time.  Esparza expressly raised this issue with the Supreme Court and was denied relief.  He could have attempted to address this issue with the Sixth Circuit on remand, but failed to do so.  In light of the above, the Court will not now revive Esparza's *Brady* claim, nearly eight years after remand, and conduct a *de novo* review of the suppressed evidence attached to the 1991 Successor Post-Conviction Petition.

Moreover, the Court rejects Esparza's claim that "no Court, including this one, has ever addressed what the outcome of the trial would have been if the State had indicted Mr. Esparza using the proper 'principal offender' death specification language but had not suppressed the evidence that Mr. Esparza was not actually the principal offender." (ECF # 206 at 6).  The Court notes Esparza discussed the suppressed evidence, his public records request, and the procedural history and status of his 1991 Successor Post-Conviction Petition in both his Petition and Traverse.  Indeed, in his Petition, Esparza maintains that "the documents that were released [pursuant to his public records request] raised serious questions as to the reliability of the evidence upon which his conviction **and death sentence** were based." (ECF # 12 at p. iv.) (emphasis added).  Additionally, in his Traverse, Esparza cites extensively to the exhibits attached to his 1991 Successor Post-Conviction Petition to support his *Brady* claim, arguing that the suppressed evidence was material because it demonstrated he was not the principal offender. (ECF # 33 at pp. 16-38) (citing Exhibits 1, 3, 5, 7, 8, 9, 15, 16, 20, 21, 25, 26, 29, 43, 45, 60, 61, and 63 to the 1991 Successor Post-Conviction Petition).

-37-

In her October 2000 Opinion & Order, Judge O'Malley expressly considered this

evidence and denied Esparza's *Brady* claim as follows:

> Esparza's third ground for relief is that the prosecutor failed to provide
> him with exculpatory evidence, in violation of his constitutional rights.
> Specifically, Esparza alleges that the prosecutor failed to provide
> evidence that: (1) would impeach the trial testimony of James Barailloux
> and Lisa Esparza; (2) implicates other suspects in the Island Carryout
> murder; (3) indicates Esparza was intoxicated during the time the
> murder was committed and that he suffered from a mental disorder.

> Although this claim was not raised on direct appeal, like Esparza's
> second claim for relief, it is not procedurally defaulted as it also is
> premised on information that was not made available to Esparza until
> after the conclusion of his direct appeals, pursuant to his [public records
> request] litigation based on *State ex rel. Clark v. City of Toledo*, 560
> N.E.2d 1313 (Ohio 1990).  Accordingly, the Court will address this
> claim on the merits, without the benefit of a state court decision.

> To establish a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), "the
> petitioner has the burden of establishing that the prosecutor suppressed
> evidence; that such evidence was favorable to the defense; and that the
> suppressed evidence was material." *See Carter v. Bell*, 218 F.3d 581,
> 2000 WL 895827 at * 19 (6th Cir. July 7, 2000) (citing *Moore v. Illinois*,
> 408 U.S. 786, 794-95 (1972)).  "The inquiry is objective, independent of
> the intent of the prosecutors." *Id.* (citing *Brady*, 373 U.S. at 87).

> "[E]vidence is material only if there is a reasonable probability that, had
> the evidence been disclosed to the defense, the result of the proceeding
> would have been different. A 'reasonable probability' is a probability
> sufficient to undermine confidence in the outcome." *United States v.
> Bagley*, 473 U.S. 667, 676 (1985). * * *

> * * *

> It is here that Esparza's first two sub-claims must fail.  Were the Court
> to extricate James Barailloux and Lisa Esparza's testimony from the
> totality of the evidence offered at trial, **there nonetheless would be
> ample evidence to provide the Court with confidence in the trial's
> outcome.** Richardson's testimony, for example, provided the jury with
> Esparza's confession of the killing.  **Furthermore, a jury reasonably
> could have found that, although other suspects were investigated for
> this homicide, Esparza was the actual assailant.**

-38-

(ECF # 132 at 43-45) (emphasis added).  Judge O'Malley also noted "Esparza's claims of exculpatory evidence revealing that he was intoxicated on the evening of the Island Carryout murder and his mental dysfunction fail because that information was not solely under the State's control."  *Id.* at 45.

There is no indication from the above language that Judge O'Malley considered the *Brady* material in the context of an aggravated murder charge, as opposed to a capital murder charge.  To the contrary, Judge O'Malley specifically noted a reasonable jury could have found that Esparza was the "actual assailant," despite the suppressed evidence suggesting other suspects were investigated for the homicide.  (ECF # 132 at 45).

Thus, and for all the reasons set forth above, the Court rejects Esparza's argument that this Court should reconsider its July 12, 2012 Opinion & Order and grant him habeas relief on his *Brady* claim.

**IV.  Conclusion**

Accordingly, Petitioner's Motion to Expand the Record (ECF # 200) is granted. Petitioner's Motion to Alter or Amend Judgment and Supplemental Memorandum in Support Thereof (ECF # 197, 201) are granted in part and denied in part as follows.  The Court grants Esparza's Motion to Alter or Amend (ECF # 197) to the extent it requests the Court correct its misstatement that Esparza's 1991 Successor Post-Conviction Petition was denied by the state courts without an evidentiary hearing.  Accordingly, the Court amends its July 12, 2012 Memorandum of Opinion & Order to reflect that Esparza's 1991 Successor Post-Conviction Petition was, in fact, never adjudicated by the Ohio state courts.

In all other respects, however, Esparza's Motion to Alter or Amend Judgment and

Supplemental Memorandum in Support Thereof (ECF # 197, 201) are denied.

IT IS SO ORDERED.


   S:/Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE